## Case No. 6,852.

### HUIDEKOPER v. McCLEAN.

[1 Wash. C. C. 136.] [1]

Circuit Court, D. Pennsylvania. April Term, 1804.

EJECTMENT — SURVEY UNDER LAND-WARRANT — CONSTRUCTION OF STATUTE—INCEPTIVE TITLE —VACATING WARRANT—FORFEITURE.

1. By the practice of Pennsylvania, relative to land titles, if a warrant is taken out for land adjoining A. B., and it is found that the land adjoining A. B. has been previously taken up; it may be laid upon land adjoining that so held by a previous title.

2. The inceptive title of a warrant holder for lands in "the new purchase," is a mere right of possession, to be consummated by a compliance with the requisites of the law; and unless

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

they were performed, no estate vested in him, and he lost his right of possession.

3. Upon a forfeiture being incurred, by a non-compliance with the terms of the warrant, no third person could enter on the land; no vacating warrant could issue, as it is provided by the law, that it can only issue to an actual settler.

This case did not differ materially from that of Huidekoper v. Burrus [Case No. 6,-848]. In 1796 a cabin was built by a person claiming under the company, and some land was cleared; but upon the evidence, the question left to the jury was, whether a settlement was commenced within a reasonable time after the prevention ceased; and whether ten acres were cleared within five years after the first settlement. But in this case, the following objections were made to the plaintiff's title:—First. That the warrant was issued to Charles Levi, for four hundred acres, north, or adjoining land this day granted to Charles Hall. But the land in question did not adjoin Charles Hall; there being between this and Charles Hall's, another tract to which another was entitled.

On the part of the plaintiff, the construction of the law was re-argued, much as in the former case, with this additional observation: that if actual settlement means improvement within two years, and residence for five, that this absurdity would follow; that by the preceding part of the ninth section, it would require a settlement of five years to be performed in the course of two.

The plaintiff also relied upon a prevention, from unlawful combinations of settlers.

WASHINGTON, Circuit Justice (charging jury). As to the objection made by the defendant; it sufficiently appears in evidence, that the warrant for four hundred acres, in the name of Charles Hall, was claimed by a prior improvement of Luke Hill; and that Charles Hall's warrant was considered as a lost one. Consequently the company could not survey Charles Hall's warrant on that land, and were necessarily obliged to go on to the next adjoining, to survey Charles Levi's warrant. This is the constant practice in this state, and a contrary decision now, would be of most mischievous consequences. The patent states, that it is for the land surveyed for Charles Levi, by virtue of his warrant, which must be adjoining Charles Hall, unless an interruption had taken place.

It has been contended by the plaintiff's counsel, that even if they have failed to comply with the law; yet, until the commonwealth has taken advantage of the forfeiture, no other person can enter upon the land, and defeat the title of the plaintiff. We think there is no weight in this argument. It is true, the warrant holder had an incipient title; but it was merely a right of possession for particular purposes; that is, to settle and improve, so as to comply with these conditions, on the performance of

which an' estate was to vest in him; but unless those conditions were performed, no estate did vest in him, and he lost his right of possession. The state was not bound to pursue any particular mode for regaining the possession. The law authorized any person to acquire a title to lands, for which warrants had been granted, and the condition not performed by warrant or settlement. But if no person can enter and settle on lands, where the warrant holder has neglected to perform the conditions on which he was to have an estate in it; then no vacating warrant could ever issue; as that must be to an actual settler; and yet by the express words of the law, such a warrant may issue, in cases where the conditions imposed on the warrant holder have not been complied with.

I come now to the construction of the law. I have listened with great pleasure to the second argument of this question, with a mind I think unprejudiced by the opinion I delivered in the case of Huideköper v. Burrus [supra], and if I know myself, I would with pleasure have retracted that opinion, if I felt myself convinced by the able and ingenious argument I have now heard. My opinion then was stated to be, that actual settlement meant improvements made within two years, and residence for five. This is controverted, upon the ground that it would be to require a five years' residence, to be performed in the space of two. This absurdity really grows out of the literal reading of the enacting clause of the 9th section; but we must see if it may not be avoided, by such an interpretation as will make all the parts of the law consistent and harmonious. The words are "that no warrant or survey, &c. shall vest any title to the lands therein mentioned, unless the grantee has, prior to the date of such warrant, made, &c., or shall within two years next after the date of the same, make, or &c. an actual settlement thereon, by clearing, fencing, and cultivating, two acres on each hundred, erecting a habitation for the residence of man, and residing, or causing a family to reside thereon, for five years next following his first settling the same, if, &c."

Now, the actual settlement is thus declared to consist; in making certain improvements within two years; and a residence for five; but the apparent absurdity arises merely from the order in which the sentence is arranged, and by an easy transposition will be removed. I read the sentence thus,—that to give a title, there must be an actual settlement, by making certain improvements thereon within two years after the date of the warrant, and residing thereon for five years, so as to make an actual settlement consist in those two things, improvement within two, and residence for five years after date of the warrant. That this is the plain legislative definition of actual settlement, appears obvious to me, from the words

of the law itself, as above quoted. If actual settlement means improvements, made within two years, independent of residence, then the difficulty I stated in the case of Huideköper v. Burrus must exist; viz. that if a man had made the improvements required in the enacting clause, but had been driven off, so that he could not continue his residence, he would have been exposed to the complete operation of the enacting clause, without being saved by the proviso; for the latter could not apply to such a case.

But in truth it is of no consequence in this, any more than in the other case, whether actual settlement means both improvement and residence, or only the former; because, in neither is it pretended that the improvements were made, within two years from a reasonable time after the prevention ceased. The great question is, whether persistance to make the settlement, was intended to consist in endeavours merely, or in actually making the settlement; whatever may be sufficient to constitute it. If the party is not to persist to effect, after the prevention had ceased, that which he must have done had it never existed; then he must persist, during the time when he is prevented, whether that be long or short. Now, to require persistance in doing what he is prevented, and therefore excused from doing, is, to my comprehension, an absurdity, with which the legislature should not be charged. Persist how, and for what purpose? The law supposes the party to be driven off and prevented from settling; and if, under such circumstances, he is to persist in his endeavours to settle, nothing short of actually settling himself upon the land can do; for although he may risk his life in the attempt, yet if he can attempt it, and run the risk, and if he is not to go thus far, what is he to do to afford evidence of persistance? Will his hovering on the borders of the land; sometimes in a moment of tranquillity, going on at the imminent hazard of his life, and then flying when he hears of an enemy, answer the purpose? Could the law have intended this? Is not its meaning obviously otherwise? And if he was not required to do this, by what scale are we to graduate the degrees of persistence? Would not a man, who, (during a period when it was madness to attempt a settlement,) resided generally in the interior of the country, without spending a thought upon his intended settlement, until the danger was over, be considered as having complied with the conditions of the law, as fully as the company, whose agents had made preparations for settling when the danger should be over? If not, then how will the company enter into competition, upon the score of merit, or rather of hardihood, and culpable temerity, with those fearless adventurers, who went on the lands at a time when they associated arms of defence with the instruments of agriculture: who never went to their fields but

with their rifles, and carried them from one cornhill to another. The truth is, that persistance can never be considered as contemporaneous with prevention. So long as prevention continues, the law excuses the party from persisting; for it would be unavailing. But if persistence was to consist in making not one effort, during the period of prevention, then to say that such a persistence is a compliance with the requisites of the law, is to substitute, in the place of a substantial good, viz. the settlement of the country, a sort of merit merely imaginary. The only way therefore to make sense of the law, and to comply with the manifest intention of the legislature, is to construe the proviso as requiring the party to do that, after the impediments had ceased, which he must have performed had they never existed. He must persist until his endeavours are crowned with success. Instead of being obliged, at the risk of his life, to improve within two years from the date of his warrant, and to reside for five, it is enough, under the proviso, if he does the same things after the prevention had ceased.

As to what shall be deemed a reasonable time for commencing the settlement, after the prevention had ceased, I shall leave it entirely to the jury to decide, upon the circumstances of that country, after the war had entirely ceased, and the preparations necessary for such an undertaking.

As to the combination of associated intruders, if they went no farther than to support what they supposed to be their rights, for it appears they asserted titles adverse to that of the company; I do not think that this ought to excuse the plaintiffs, for not making their settlement in time; if you should be of opinion they were not made in time, neither do I think, that, if their opposition was unlawful, and to support tortious intrusions, that they should affect the defendant, unless he appeared to have been one of the associates, or to have opposed the settlement of the country.

The jury found for the plaintiff.

[NOTE. Cases Nos. 6,851 and 6,853 were similar suits, involving the titles of different parts of the same original tract, but the latter turned upon points not raised in the case at bar.]